UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| VANESSA MACKLIN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:13-cv-00020-JMS-MJD |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| Defendant. | ) | |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Vanessa Macklin applied for supplemental security income from the Social Security Administration on April 21, 2005, alleging a disability onset date of December 1, 2004. After a series of administrative proceedings and appeals, including a hearing in March 2008 before Administrative Law Judge ("ALJ") Ronald Jordan, the ALJ issued a finding on April 11, 2008 that Ms. Macklin was not entitled to supplemental security income. The Appeals Council denied Ms. Macklin's timely request for review of the ALJ's decision, rendering that decision the final decision of the Defendant, Commissioner of the Social Security Administration ("the Commissioner"), for the purposes of judicial review. After filing a civil action, Ms. Macklin's application was remanded for a rehearing.

In April 2010, the Appeals Council remanded Ms. Macklin's claim for readjudication. The ALJ held a hearing on July 29, 2010, and again determined that Ms. Macklin was not entitled to receive supplementary security income. Again the Appeals Council denied review, making the ALJ's decision the Commissioner's "final decision" subject to judicial review. Ms. Macklin has filed this civil action under 42 U.S.C. § 405(g), asking the Court to review her denial of benefits.

# I.
## BACKGROUND

Ms. Macklin was thirty-two years old at the time of her disability application on April 21, 2005.  [R. 78.]  She has completed her GED and earned her paralegal specialist associate's degree in April 2003.  [R. 119.]  Prior to her application, Ms. Macklin held a variety of unskilled and semi-skilled jobs, including working as a bakery clerk, a grocery store cashier, a home health aide, a nursing associate, and a receptionist.  [R. 29-32.]  Prior to the ALJ's first decision, Ms. Macklin's last job was as a receptionist, working at a semi-skilled, sedentary level.  [R. 52-53.]

Ms. Macklin's alleged onset date is December 1, 2004, [R. 114], and she claims that although she is not currently disabled, she was disabled through 2007 for a variety of impairments which will be discussed as necessary below.[1]  [R. 621.]

Using the five-step sequential evaluation set forth by the SSA, the ALJ issued an opinion on November 23, 2010.  [R. 487-502.]  The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Ms. Macklin engaged in substantial gainful activity[2] during the following periods: the 4th quarter of 2008; the 4th quarter of 2009; and the 1st, 2nd, and 3rd quarters of 2010.  The ALJ further found, however, that there was a continuous 12-month period during which Ms. Macklin did not engage in substantial gainful activity.  [R. 489-90.]

- At Step Two, the ALJ found that Ms. Macklin suffered from the severe impairments of asthma, tachycardia, depression, and anxiety.[3]  [R. 490.]

---

[1] Ms. Macklin detailed the pertinent facts in her opening brief, and the Commissioner did not dispute those facts.  Because the facts implicate sensitive and otherwise confidential information concerning Ms. Macklin, the Court will simply incorporate those facts by reference herein.  Specific facts will be articulated as needed.

[2] Substantial gainful activity is defined as work activity that is both substantial (*i.e.* involves significant physical or mental activities) and gainful (*i.e.* work that is usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 404.1572(a) and § 416.972(a).

[3] Ms. Macklin's arguments on appeal relate only to her mental impairments of depression and anxiety, and not to her physical impairments of asthma and tachycardia.  Accordingly, the Court's discussion is limited to her mental impairments.

- At Step Three, the ALJ found that Ms. Macklin did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments.  [R. 490-501.]  The ALJ concluded that Ms. Macklin had the residual functional capacity ("RFC") to perform "light work" with the following limitations: "she is limited to lifting, carrying, pushing or pulling 20 pounds occasionally and 10 pounds frequently.  She can stand and walk 6 hours in an 8-hour day, and can sit 6 hours in an 8-hour day.  She should work in a clean air atmosphere with no concentrated exposure to dust, fumes, gasses, strong odors or poor ventilation.  She should not work in areas of temperature extremes or excessive humidity.  She is limited to work involving only routine, repetitive tasks.  She should not be required to meet unusually high strict time or production quotas.  She should have no contact with the general public and only occasional contact with coworkers."  [R. 492-93.]

- At Step Four, the ALJ found that Ms. Macklin was not able to perform any past relevant work.  [R. 501.]

- Finally, at Step Five, considering Ms. Macklin's age, education, work experience, RFC, and the testimony of a vocational expert ("VE"), the ALJ determined that jobs existed in the State of Indiana that Ms. Macklin could perform, such as inspector, hand packer, and clerical sorter.  [R. 501-02.]

Based on these findings, the ALJ concluded that Ms. Macklin was not entitled to receive supplemental security income.  [R. 502.]  Ms. Macklin requested that the Appeals Council review the ALJ's decision, and on November 7, 2012 the Appeals Council denied Ms. Macklin's request for review.  [R. 477.]  Accordingly, the Appeals Council's decision became the final decision of the Commissioner for the purposes of judicial review.

## II.
### STANDARD OF REVIEW

The Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision.  *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted).  For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (quotation omitted).  Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this

Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court *must* affirm the denial of benefits. Otherwise, the Court will remand the matter back to the Social Security Administration for further consideration; only in rare cases can the Court actually order an award of benefits. *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

To evaluate a disability claim, an ALJ must use the following five-step inquiry:

(1) [is] the claimant…currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment…one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment,…can [she] perform h[er] past relevant work, and (5) is the claimant…capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted). After Step Three, but before Step Four, the ALJ must determine a claimant's RFC, which represents the claimant's physical and mental abilities considering all of the claimant's impairments. The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e),(g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

### III.
### DISCUSSION

Ms. Macklin raises three main arguments on appeal: (1) that substantial evidence does not support the ALJ's Step Three determination that Ms. Macklin's combined impairments do

not meet or medically equal any Listed Impairment, [dkt. 19 at 14-18]; (2) that the ALJ's credibility determination is patently erroneous, [*id.* at 19-22]; and (3) that substantial evidence does not support the ALJ's Step Five determination, [*id.* at 23-24].  The Court will address each challenge in turn.

### A.  Whether Substantial Evidence Supports the ALJ's Step Three Determination

Ms. Macklin first argues that substantial evidence does not support the ALJ's determination that her combined impairments did not meet or medically equal Listings 12.04 or 12.06. [Dkt. 19 at 14-18.]  Specifically, Ms. Macklin argues that the ALJ has made the same error noted by the Court in her appeal of the ALJ's first decision, *Macklin v. Astrue*, 2010 U.S. Dist. LEXIS 32203 (S.D. Ind. 2010) ("*Macklin I*").  She asserts that "[t]he ALJ reviewed the evidence under the 12.04B criteria, but ignored the evidence the Court believed indicated that the claimant had Marked impairment under those criteria….The ALJ concluded that despite the claimant's multiple suicide attempts in 2007, she had not experienced any episodes of decompensation, which have been of extended duration."  [Dkt. 19 at 15-16.]  Ms. Macklin argues that the "ALJ ignored and only selectively considered evidence proving the claimant's impairments met or equaled Listings 12.04 and 12.06," and "[i]t is reversible error for an ALJ to select and discuss only the evidence that favors his denial decision…."  [*Id.* at 16.]  She contends that the ALJ's decision at Step Three is "contrary to the medical evidence."  [*Id.* at 18.]

The Commissioner responds that the Court in *Macklin I* had two primary concerns: (1) "that the ALJ had, in his first decision, not sufficiently articulated his analysis of whether Plaintiff's suicide attempts could be considered 'episodes of decompensation of extended duration' under the 'B criteria' to permit review"; and (2) "that the ALJ should have considered whether sufficient evidence existed to establish that [Ms. Macklin] had a 'marked' impairment in social

functioning or maintaining concentration, persistence, or pace." [Dkt. 24 at 8 (citing R. 591-94).] She argues that the ALJ provided ample support for his conclusions that Ms. Macklin's suicide attempts were not episodes of decompensation of extended duration sufficient to meet the Listings' "B" criteria, and that Ms. Macklin did not suffer marked limitations in any functional area. [*Id.* at 9-10.]

Ms. Macklin argues on reply that the Commissioner mischaracterizes the holding of *Macklin I*, which she asserts was that the ALJ "ignored the evidence proving that the claimant's mental impairments met or equaled Listings 12.04 or 12.06." [Dkt. 27 at 4.] Further, she contends that the ALJ's second opinion violates the law of the case doctrine because the ALJ refused to consider testimony from one of Ms. Macklin's medical providers (Dr. Pitcher) that she suffered repeated decompensations and instead "improperly used the evidence from the period after she recovered and returned to work and was not disabled to argue that she was not disabled during the period of disability." [*Id.* at 5.]

### 1. The Law of the Case Doctrine

Ms. Macklin and the Commissioner have differing views of *Macklin I*, and the Court finds it necessary to determine the scope of that decision at the outset in connection with considering whether the law of the case doctrine might apply. The law of the case doctrine is applicable to judicial review of administrative actions and requires "'the trial court to conform any further proceeding on remand to the principles set forth in the appellate opinion unless there is a compelling reason to depart.'" *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998) (quoting *Law v. Medco Research, Inc.*, 113 F.3d 781, 783 (7th Cir. 1997)). An administrative agency must, on remand from a court, conform to that principle. *Id.* *Wilder* holds, however, that "[n]ew evidence can furnish compelling grounds for departure from a previous ruling." *Id.* "'New' evidence is

evidence 'not in existence or available to the claimant at the time of the administrative proceed-ing.'"  *Sample v. Shalala*, 999 F.2d 1138, 1144 (7th Cir. 1993) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)).  But if there is no new evidence or the new evidence does not under-mine the previous ruling on sufficiency, then that previous ruling must stand.  *Id.*

Here, Ms. Macklin argues that the Court in *Macklin I* determined that "the evidence dur-ing the period of disability was not sufficient to support" a finding of no disability, [dkt. 27 at 6], and so the ALJ was bound by that determination and could not again conclude that Ms. Macklin did not meet or equal Listings 12.04 or 12.06.  The Court disagrees.  *Macklin I* found that the ALJ "ignored evidence from Macklin's treating physicians, which tended to support the assertion that Macklin's impairments meet or equal a listed impairment."  [R. 590-91.]  Specifically, it noted that the ALJ "relied exclusively on Dr. Leiphart's psychological evaluation in making the determination that Macklin's impairments do not meet or equal a listed impairment," but that "competent medical evidence in the record pertaining to Macklin's suicide attempts and mental health treatment *could* support a conclusion that she experienced the requisite number of epi-sodes of decompensation and suffered from 'marked' restrictions in one or more of the areas of daily living; social functioning; or maintaining concentration, persistence, or pace."  [R. 591-92 (emphasis added).]  The Court in *Macklin I* went on to state that "[h]ad the ALJ properly consid-ered all of the available medical evidence of record, he *could* have found that Macklin's impair-ments meet or equal at least two of the 'Paragraph B' criteria for Listings 12.04 or 12.06.  Of course, once he considered this evidence, the ALJ *could have gone either way*.  But consider it he must."  [R. 593-94 (emphasis added).]  It concluded that the ALJ's Step Three determination was not supported by substantial evidence, not that it had to come out one way or the other on remand.

The Court finds *Macklin I*'s concern to be that the ALJ's articulation for his reasons did not include a discussion of all of the relevant evidence – instead, the ALJ only discussed evidence favorable to his decision.  The Court also finds, however, that *Macklin I* explicitly refrained from finding that the evidence *required* a finding of disability.  To the contrary, the Court in *Macklin I* was careful to use the word "could" when discussing what conclusions could be drawn from the evidence, and specifically noted that after considering all of the evidence the ALJ "could have gone either way."  [R. 594.]  The crux of the decision was that the ALJ reached his conclusion without discussing relevant evidence that appeared to warrant a finding of disability.

The scope of *Macklin I* is such that the ALJ, in his second opinion, was not bound to conclude that Ms. Macklin met or medically equaled a listing.  Instead, he was simply bound to consider all of the evidence, not just the evidence favorable to a finding of no disability.  With this in mind, the Court will now address whether the ALJ opinion that is the subject of this appeal adequately addressed the *Macklin I* Court's concerns and meets this Court's standards.

### 2. *12.04 and 12.06 Criteria*

The Code of Federal Regulations provides that the Social Security Administration "will find that [a claimant's] impairment(s) meets the requirements of a listing when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement…."  20 C.F.R. § 416.925(c)(3) (alteration in original).  To meet subpart B of Listing 12.04, a claimant must show that his impairments caused at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration[.]

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.04(B) (alteration in original).  A "marked"

limitation "means a limitation that is 'more than moderate' but 'less than extreme.'"  *Id.*

> In the alternative, Ms. Macklin could meet or equal Listing 12.04 by showing:
>
> Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychoso-cial support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration; or
>
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> 3. Current history of 1 or more years' inability to function outside a highly sup-portive living arrangement, with an indication of continued need for such an arrangement.

Listing 12.04(C).

To meet or equal listing 12.06, Ms. Macklin must prove her anxiety caused at least two of

the consequences from Listing 12.04(B), or resulted in a "complete inability to function inde-

pendently outside the area of [her] home."  Listing 12.06(C).  Episodes of decompensation are

defined as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of

adaptive functioning, as manifested by difficulties in performing activities of daily living, main-

taining social relationships, or maintaining concentration, persistence, or pace."  Listing

12.00(C)(4).  For "repeated episodes of decompensation, each of extended duration," Ms. Mack-

lin would have to have suffered "three episodes within one year, or an average of once every four

months, each lasting for at least two weeks."  Listing 12.00(C)(4).

If an impairment or combination of impairments "does not meet the criteria of a listing,

it can medically equal the criteria of a listing."  20 C.F.R. § 416.925(c)(5).  The provision on

medical equivalence states in pertinent part:

> (1) (i)  If you have an impairment that is described in…appendix 1…, but--
>
>> (A)  You do not exhibit one or more of the findings specified in the particular listing, or
>>
>> (B)  You exhibit all of the findings, but one or more of the findings is not as severe as specified in the particular listing,
>
> (ii) We will find that your impairment is medically equivalent to that listing if you have other findings related to your impairment that are at least of equal medical significance to the required criteria.

20 C.F.R. § 416.926(b).  In determining medical equivalence, an ALJ should consider "all evidence in [the claimant's] case record about [the claimant's] impairment(s) and its effects on [the claimant] that is relevant to this finding."  20 C.F.R. § 404.1526(c).  The ALJ also should consider "the opinion given by one or more medical or psychological consultants designated by the Commissioner."  *Id*.

Social Security Ruling ("SSR") 96-6p provides that the ALJ "is responsible for deciding the ultimate legal question of whether a listing is met or equaled."  1996 SSR LEXIS 3, *7-8.  However, SSR 96-6p further states that "longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight."  *Id*.

In *Scheck v. Barnhart*, 357 F.3d 697 (7th Cir. 2004), the Court was faced with a challenge that the ALJ did not satisfy her duty to "minimally articulate his or her justification for rejecting or accepting specific evidence of disability."  *Id.* at 700.  There, the ALJ relied on the reports submitted by two state agency physicians in determining that the claimant was not disabled.  *Id.*  The Court rejected the claimant's argument, relying on the closely analogous case of *Steward v. Bowen*, 858 F.2d 1295 (7th Cir. 1988).  In *Steward,* the Court held:

> In the present case, Steward did not present any substantial evidence to contradict the agency's position on the issue of medical equivalency. The opinions of Steward's treating physicians simply did not address this question. Thus, the ALJ did not reject specific evidence supporting Steward's position that her impairments meet or equal a listed impairment in favor of the contrary opinions of the Secretary's consulting physicians. It was therefore unnecessary for the ALJ to specifically articulate his reasons for accepting the consulting physicians' opinions on the question of medical equivalency.

*Id.* at 1299.  As did the Court in *Scheck*, this Court also finds the guidance of *Steward* apposite to the issue before it.

Ms. Macklin's arguments relating to the ALJ's Step Three finding are somewhat jumbled, but the Court discerns the following arguments: (1) the ALJ still ignored evidence that Ms. Macklin had "[m]arked impairment under [the 12.04(B)] criteria," including evidence of "multiple suicide attempts in 2007" which indicated episodes of decompensation, [dkt. 19 at 15-18]; (2) the ALJ improperly used evidence from the period after Ms. Macklin had recovered and returned to work "to argue that she was not disabled during the period of disability," and to find that her limitations were moderate instead of marked, including that she returned to work in 2008, [dkt. 27 at 5-7]; and (3) the ALJ ignored Ms. Macklin's lower GAF scores, [*id.* at 7-8].

### i.      Impairments and Periods of Decompensation

At Step Three of Ms. Macklin's evaluation, the ALJ found that Ms. Macklin failed to satisfy the criteria set forth in Subpart B of Listing 12.04, [R. 491-92]. This finding was predicated on a discussion of objective medical evidence from state agency physicians and treating physicians, as well as subjective statements made by Ms. Macklin herself, which concluded that:

- Ms. Macklin had mild restrictions in activities of daily living, [R. 491];
- She had moderate difficulties in social functioning, [*id.*];
- She had moderate difficulties with concentration, persistence, and pace, [*id.*]; and
- She had not experienced any episodes of decompensation which were of extended duration, [R. 492, 499-501].

The Court finds that the ALJ adequately discussed each factor contained in Subpart B, provided a finding for each, and described the evidence upon which his finding was based. [*Id.*] As for activities of daily living, the ALJ noted Ms. Macklin's testimony from the first hearing that her son did the grocery shopping, but she took her daughter to doctor and dentist appointments, that she did housework and cooking (with help from her son), and that she enjoyed watching television, reading, playing solitaire, and working puzzle books.[4] [R. 491.] In terms of social functioning, the ALJ based his finding of moderate difficulties on Ms. Macklin's testimony that she felt anxious and irritable when in a room with other people (even just her son, watching television), that she was easily irritated and having difficulty speaking to a group of people, that her affect was restricted at times but also appropriate at times, and that she was cooperative during the exam. [*Id.*] For concentration, persistence, and pace, the ALJ found that Ms. Macklin had moderate difficulty and noted examination results from August 2005 indicating her thought content was logical and sequential, that she did well during a memory test, that she gave seven out of seven correct responses to mathematical calculations, that her thought content was appropriate and future oriented and her thought process was logical, sequential, and goal-oriented at a February 2006 examination, and that her concentration, judgment, and insight were all described as good. [*Id.*] Ms. Macklin does not point to any evidence in the record that contradicts these findings and that the ALJ ignored.

The final factor in Listing 12.04(B) – repeated episodes of decompensation, each of extended duration – is the factor that *Macklin I* primarily focused on. In his second opinion, the ALJ provides an extensive discussion of Ms. Macklin's suicide attempts in connection with his RFC determination. [R. 493-494, 499-501.] The Court finds that the ALJ's discussion conclud-

---

[4] The ALJ also discussed evidence from after the first decision, which Ms. Macklin argues was improper. That issue will be discussed separately below.

ing that Ms. Macklin did not suffer repeated episodes of decompensation, each of extended duration, is supported by the record, and that the ALJ built a logical bridge to support his finding. Specifically, the ALJ discussed Ms. Macklin's testimony that she never planned to commit suicide, that she never really felt like she was depressed to the point where she needed to see a psychiatrist, that some of her testimony regarding the suicide attempts was conflicting, and that she repeatedly did not show up for scheduled psychiatric appointments. [*Id.*]

Ms. Macklin also argues that the ALJ did not address a report from Dr. Pitcher stating that her suicide attempts were "decompensations." [Dkt. 19 at 16.] But the ALJ did discuss Dr. Pitcher's testimony, which was that repeated suicide attempts could be decompensation depending on whether the claimant was in treatment or taking medication, but that she did not have enough evidence to make that determination. [R. 642.] The ALJ specifically noted that Dr. Pitcher testified at the hearing that while "it is clear [Ms. Macklin] has been depressed throughout the record," "there have been times when the claimant was not taking any psychiatric medications," that Ms. Macklin "either did not follow up with treatment on a regular basis, or she would not show up at all for her appointments," that "there are major gaps between the episodes of alleged decompensation and no real treatment since her onset date," and that "the medical records do not support a one-year period of impairment." [R. 497, 501, 638-49.] This testimony supports the ALJ's conclusion that Ms. Macklin did not have repeated episodes of decompensation, each of extended duration, for purposes of Listings 12.04 and 12.06.[5]

---

[5] The ALJ's discussion of Dr. Pitcher's testimony directly refutes Ms. Macklin's argument that "[t]he ALJ relied on his own layperson's expertise in evaluating the claimant's impairments, citing no supportive medical-psychiatric evidence," and "[t]he ALJ failed to cite any testimony from the medical expert at the hearing as to whether the claimant's suicide attempts were medically equivalent to the 12.04B repeated decompensations." [Dkt. 19 at 16.]

Through his discussion of the Listing 12.04(B) factors, the ALJ addressed the evidence that the *Macklin I* Court noted he had ignored in the first opinion, including: (1) Ms. Macklin's trips to Community Hospital in February 2006 and August 2007, and her GAF scores of 41 and 48, [R. 496-98]; (2) notes on her February 2006 intake report at Community Hospital that she had not been to the grocery store in two months, had skipped her nursing classes, had difficulty concentrating, and avoided leaving the house, [R. 496]; (3) her attempted suicides in November and December 2007, [R. 500]; (4) a notation by Dr. Leiphart that she dropped out of school because she could not handle a classroom with people, [R. 495]; and (5) an August 20, 2007 mental health evaluation in which she reported that she could not tolerate group therapy, [R. 496]. The Court finds that the ALJ's discussion of this evidence was adequate, and that the ALJ built a logical bridge supporting his conclusion that Ms. Macklin did not meet Listings 12.04 or 12.06.

### ii.      Consideration of Evidence from After Disability

Ms. Macklin argues that the ALJ erred by basing his Listing 12.04(B) analysis on evidence from after the time period that Ms. Macklin claims she was disabled. [Dkt. 27 at 6.] Ms. Macklin states that she is only claiming disability from 2003 to 2007, and that any evidence from 2008 to 2010 was improperly considered by the ALJ. [*Id.*] This argument fails for several reasons.

First, Ms. Macklin did not argue in her initial brief that the ALJ should not have considered evidence from 2008 to 2010. Instead, she raised this argument for the first time on reply, denying the Commissioner an opportunity to respond. Arguments raised for the first time on reply are generally waived. *See Griffin v. Bell*, 694 F.3d 817, 822 (7th Cir. 2012); *Hendricks v. New Albany Police Dep't*, 749 F.Supp.2d 863, 872 (S.D. Ind. 2010).

Second, in any event, the Court finds the ALJ's reference to the more recent 2008 to 2010 evidence to be harmless error which does not require remand.  *See Schomas v. Colvin*, 2013 U.S. App. LEXIS 20289, *14-15 (7th Cir. 2013) ("We will not remand a case to the ALJ for further explanation if we can predict with great confidence that the result on remand would be the same"); *Keys v. Barnhart*, 347 F.3d 990, 994 (7th Cir. 2003) (the doctrine of harmless error is fully applicable to judicial review of administrative decisions).  In each instance where the ALJ referred to evidence from 2008 to 2010, it was to add to his discussion in his first opinion which reached the same conclusions.  In other words, the 2008 to 2010 evidence did not sway him to decide the issues differently – it is clear that he would have reached the same conclusion even absent the more recent evidence.  For example, in connection with activities of daily living, the ALJ simply added to his earlier finding of mild limitations that Ms. Macklin has engaged in sub-stantial gainful employment during part of 2008 and continuously since the 4th quarter of 2009.  [R. 491.]  The rest of his discussion – except for adding that Ms. Macklin testified that her son does the grocery shopping, but that she took her daughter to doctor and dentist appointments – is the same.  The same holds true for the ALJ's findings that Ms. Macklin had moderate difficulties with social functioning and moderate difficulties with concentration, persistence, and pace, where the ALJ added references to a May 2010 examination – evidence of which Ms. Macklin herself submitted – but reached the same result he did the first time around.  [*Id.*]  The ALJ's statement that Ms. Macklin returned to work in 2008, in connection with the analysis of episodes of decompensation, [R. 494], is one sentence out of many which discuss in detail pre-2008 evidence and support the same finding the ALJ made the first time around.  The Court finds that the ALJ's references to this more recent evidence – which was evidence submitted by Ms. Macklin

- 15 -

herself – is harmless error as it clearly was not critical to the ALJ's decision since he made the same decision in his first review.

### iii.     Lower GAF Scores

As to Ms. Macklin's argument that the ALJ failed to "note, however, the much lower GAFs of 43…, 41… and 48," [dkt. 27 at 7], the Seventh Circuit Court of Appeals has made it clear that "nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (quoting *Wilkins v. Barnhart*, 69 Fed.Appx. 775, 780 (7th Cir. 2003)).  Moreover, the ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993).

Here, it is clear that the ALJ did not fail to consider Ms. Macklin's lower GAF scores. Instead, while discussing Ms. Macklin's RFC, the ALJ expressly referenced the lower GAF scores and explained why he was not basing his determination on them.  [*See* R. 497 ("I note that the claimant has been assessed with GAF's at or below 50, which are typically indicative of an inability to work.  However, as noted in her testimony, the claimant never returned for treatment as she simply was not as depressed as she thought she was.  The GAF scores are clearly a snap-shot impression of an individual's ability to function and clearly not indicative of her ability to function on a day-to-day basis.  Moreover, these are defined…as 'useful for planning treatment,' and are measures of both severity of symptoms and functioning level….Because the 'final GAF rating always reflects the worse of the two,'…the score does not reflect the clinician's opinion of functioning capacity.  Accordingly, 'nowhere do the Social Security regulations or case law re-quire an [ALJ] to determine the extent of an individual's disability based entirely on his or her

GAF score'".] The Court finds this discussion sufficient to establish that the ALJ did not simply disregard Ms. Macklin's lower GAF scores in making his Step Three determination.

The Court finds that the ALJ's ultimate determination that Ms. Macklin's impairments did not meet or medically equal any Listing, was supported by substantial evidence contained in the record. The ALJ considered the record as a whole, properly weighed all of the evidence before him, and thoroughly articulated his reasoning. His second opinion fully addressed the concerns noted by the *Macklin I* Court, and this Court does not find error with the ALJ's Step Three determination.

### B. The ALJ's Credibility Determination

The ALJ's credibility determination is typically entitled to special deference. *Scheck*, 357 F.3d at 703; *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying"). Although the absence of objective evidence cannot, standing alone, discredit the presence of substantive complaints, *Parker v. Astrue*, 597 F.3d 920, 922-23 (7th Cir. 2010), when faced with evidence both supporting and detracting from claimant's allegations, the Seventh Circuit has recognized that "the resolution of competing arguments based on the record is for the ALJ, not the court," *Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002). "[D]etermining the credibility of the individual's statements, the adjudicator must consider the entire case record," and a credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006).

Ms. Macklin argues that the ALJ's credibility determination was patently erroneous as contrary to SSR 96-7p. [Dkt. 19 at 19-22.] In support of this argument, Ms. Macklin asserts that

"[t]he ALJ's rejection of the GAFs of 43…, 41…, and 48…, proving total disability and fully corroborating the claimant's allegations of disability was contrary to his duty to consider…'[t]he location, duration, frequency, and intensity of the individual's pain or other symptoms….'" [*Id.* at 19.] Ms. Macklin further asserts that "[a]pplied to the instant case the ALJ thus arbitrarily rejected the claimant's statements describing her total disability." [*Id.* at 20.] Ms. Macklin concludes her argument by alleging that "[t]he ALJ's failure to cite any evidence in support of his conclusory statements and his apparently intentional vagueness in the credibility determination prevents this Court from having a basis for determining why the ALJ found the claimant's statements to be not credible. The ALJ's refusal to disclose his reasoning requires reversal of the denial decision." [*Id.* at 22.]

Ms. Macklin makes no attempt to develop a cogent legal argument to support her position. She simply quotes the ALJ's opinion without including any citations to the record that contradict his conclusion, and regurgitates various propositions of law, with a series of conclusory statements thrown in for good measure. As it has done before, the Court finds that this undeveloped argument is waived. *See Anderson v. Gutschenritter,* 836 F.2d 346, 349 (7th Cir. 1988) (noting that "an issue expressly presented for resolution is waived if not developed by argument") (citation omitted); *Johnson v. Astrue*, 2010 U.S. Dist. LEXIS 27503, *18 (S.D. Ind. 2010) (claimant waived argument where she merely provided a "string of block quotes from medical records…devoid of any legal analysis").

Even considering the merits of Ms. Macklin's argument, the Court finds that the ALJ did not err. Ms. Macklin argues that "[t]he ALJ's backwards procedure of first determining her residual functional capacity and then determining her credibility was obviously erroneous because 'doubts about credibility were thus critical to [the] assessment of ability to work.'" [Dkt. 19 at

20.]  She relies in part on the Seventh Circuit's decision in *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012), where the Seventh Circuit criticized ALJs for using "boilerplate" credibility language in their decisions.  Ms. Macklin is correct that the ALJ used the same boilerplate language at issue in *Bjornson* in assessing her credibility.  [*See* R. 499 ("I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment").]  But while the inclusion of this boilerplate language is disfavored, *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012), it is harmless if "the ALJ has otherwise explained his conclusion adequately," *id.*; *see also Schomas*, 2013 U.S. App. LEXIS 20289 at *16 ("[t]he use of boilerplate is innocuous when, as here, the language is followed by an explanation for rejecting the claimant's testimony").

Here, the ALJ provided extensive evidence supporting his credibility determination.  For example, he noted that:

- Ms. Macklin only "half-heartedly" engaged in treatment for her depression and anxiety, regularly failing to attend appointments and not taking her medication, [R. 499];

- She alleged that she attempted suicide by cutting her wrists, but presented no evidence of that, [R. 500];

- She alleged that she attempted suicide by overdose, but was picked up by paramedics at a friend's house which was "curious" because "an act of alleged suicide in the presence of a friend is inconsistent with suicide as the friend would clearly be expected to intervene," [*id.*]; and

- She alleged that she attempted suicide by overdosing on Ambien and intentionally driving her car into a tree, but the EMT noted she was positive for alcohol use and she was not described as sedated, which would be expected from an Ambien overdose; she also was wearing her seatbelt, which is inconsistent with suicidal ideation; and none of the reports documenting the incident described it as a suicide attempt, [*id.*].

Although the Court stresses that the use of the boilerplate credibility language is inappropriate, and that the language should not be used, given the thorough discussion provided by the ALJ, in this case its inclusion was harmless. *Filus*, 694 F.3d at 868. Ms. Macklin simply has not provided the Court any basis to overturn the ALJ's credibility determination.

### C. Whether Substantial Evidence Supports the ALJ's Step Five Determination

Ms. Macklin argues that the ALJ erred at Step Five because he "failed to account for her …moderate deficiencies in concentration, persistence and pace," and his hypothetical questions to the VE at the hearing "attempted to account for the claimant's difficulties by limiting her to routine, repetitive tasks." [Dkt. 19 at 23.]

It is well-established that when an ALJ poses a hypothetical question to a vocational expert, the question must include all limitations supported by medical evidence in the record. *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). The Seventh Circuit has repeatedly held that limiting a claimant who has limitations of concentration, persistence, and pace to "simple, routine tasks" "d[oes] not adequately account for the plaintiff's medical limitations, including an 'impairment in concentration.'" *Id.* at 684-85; *see also O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618-19 (7th Cir. 2010) (limiting claimant to "routine, repetitive tasks with simple instructions" did not account for "moderate limitation on concentration, persistence and pace"); 1985 SSR LEXIS 20, *16 (1985) ("Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job").

The flaw in Ms. Macklin's argument, however, is that the ALJ's restriction to "routine, repetitive tasks" was not the only way in which the ALJ accounted for Ms. Macklin's moderate

difficulties with concentration, persistence, and pace when he questioned the VE.  Instead, rather

than simply limiting the VE to jobs that involved simple and repetitive tasks – as the ALJs in the

cases cited by Ms. Macklin did[6] – the ALJ here specifically noted that the hypothetical person is

limited to work "with no unusually strict, high time or production quotas."  [R. 53.]  The Court

finds that this limitation, which could only relate to difficulties with concentration, persistence,

and pace, adequately accounted for Ms. Macklin's moderate deficiencies in those areas, and that

including the restriction of "routine, repetitive tasks" – along with this other restriction – is not a

ground for remand.  *See Earl v. Astrue*, 2013 U.S. Dist. LEXIS 34507, *20 (S.D. Ind. 2013) (not

finding error for ALJ's RFC to account for effects of depression on concentration and pace to

include job requiring simple, repetitive tasks with no strict production quotas); *Tully v. Astrue*,

2012 U.S. Dist. LEXIS 62101, *23 (N.D. Ind. 2012) ("most of the jobs that the vocational expert

identified not only involved only simple, routine tasks, but also required minimal interaction

with other people and no production quotas.  This well accommodated the moderate difficulty in

---

[6] The cases cited by Ms. Macklin to support her Step Five argument either did not involve a situation where the ALJ included additional limitations – as the ALJ here did – or are inapposite for other reasons.  *See Yost v. Astrue*, 2012 U.S. Dist. LEXIS 94921, *57-58 (N.D. Ill. 2012) (ALJ only limited potential job skills to "simple, repetitive tasks"); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) (did not deal with difficulties in concentration, persistence, and pace and limitation to simple, repetitive tasks, but rather related to ALJ's failure to adequately account for claimant's limitations in sitting and standing when questioning vocational expert); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618-19 (7th Cir. 2010) (unlike here, the ALJ only included limitation to "routine, repetitive tasks with simple instructions"); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (inapposite to the issue because the court found that limiting questions of vocational expert to jobs which required low level of concentration did not account for claimant's headaches or blurred vision because "concentration is not the same thing as vision"); *Young v. Barnhart*, 362 F.3d 995, 1003-04 (7th Cir. 2004) (ALJ used RFC as basis for questioning vocational expert, which included only limitation to simple, routine, repetitive, low stress work with limited contact with coworkers and limited contact with the public and did not otherwise accommodate for those difficulties); *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002) (did not specifically deal with the issue of whether limiting jobs to simple and repetitive tasks fully accounted for limitations in concentration, persistence, and pace).

concentration, persistence, and pace that the ALJ and [the doctor] acknowledged from Plaintiff's mental impairment").

## IV.
### CONCLUSION

The standard for disability claims under the Social Security Act is stringent.  "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful."  *Williams-Overstreet v. Astrue*, 364 Fed. Appx. 271, 274 (7th Cir. 2010).  Furthermore, the standard of review of the Commissioner's denial of benefits is narrow.  *Id.*  Taken together, the Court can find no legal basis presented by Ms. Macklin to overturn the Commissioner's decision that Ms. Macklin does not qualify for supplemental security income.  Therefore, the decision below is **AFFIRMED**.  Final judgment will be entered accordingly.

10/18/2013

**Distribution via ECF only**:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Patrick Harold Mulvany
patrick@mulvanylaw.com

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana